FILED

2005 Dec-16  PM 03:00
U.S. DISTRICT COURT
N.D. OF ALABAMA



# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | |
|---|---|
| MONSANTO COMPANY, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **Civil Action No. CV-03-HGD-2804-NE** |
| ) | |
| MICHAEL WHITE; WAYNE ) | (Lead Case) |
| WHITE; WHITE'S SEED ) | |
| CLEANING; and WHITE ) | |
| FARMS FEED & SEED, INC., ) | |
| ) | |
| **Defendants.** ) | |

| | |
|---|---|
| MONSANTO COMPANY, ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | **Civil Action No. CV-03-HGD-3250-NE** |
| ) | |
| NACY MEEKS and MEEKS ) | (Consolidated Case) |
| FARMS, INC., ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM OPINION

This is an action for patent infringement under 35 U.S.C. § 271.  Defendants

have filed objections to a Report and Recommendation by Magistrate Judge Harwell

G. Davis, III, recommending that the court grant all but one aspect of plaintiff's

motion for partial summary judgment.[1]  The court must make a *de novo* determination of those portions of the Report and Recommendation to which objection is made.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Federal Rule of Civil Procedure 56 provides, in part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  In applying this standard, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [the non-movant's] favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  *See also Mize v. Jefferson City Board of Education*, 93 F.3d 739, 742 (11th Cir. 1996).[2]

> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

---

[1] Doc. no. 67 (Report and Recommendation); doc. no. 68 (Defendants' Objection to the Proposed Findings and Recommendations of the Magistrate Judge's Report); doc. no. 69 (Monsanto Company's Response to Defendants' Objections to the Proposed Findings and Recommendations of the Magistrate Judge).

[2] The Federal Circuit "reviews the district court's grant or denial of summary judgment under the law of the regional circuit."  *Broadcast Innovation, L.L.C. v. Charter Communications, Inc.*, 420 F.3d 1364, 1366 (Fed. Cir. 2005).

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting

*Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v.*

*Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (*en banc*).

## THE PATENTED BIOTECHNOLOGY

Plaintiff, Monsanto Company ("Monsanto"), is in the business of developing,

manufacturing, licensing, and selling agricultural biotechnology.[3]   Monsanto

developed a genetic trait that causes plants to be resistant to glyphosate-based

herbicides.[4]   The innovation was protected under a number of United States Patents,

including Patent Number 5,352,605 ("the '605 patent").[5]  The gene has been utilized

in several agricultural crop seeds, including soybeans, and is marketed as "Roundup

Ready"® crop seed.   Monsanto claims that its technology greatly facilities weed

control, because growers can spray their fields with glyphosate-based herbicides, such

as "Roundup,"® thereby killing weeds, but without harming the Roundup Ready

crops.[6]

Roundup Ready soybeans were commercially introduced in time for the 1996

growing season.  Monsanto marketed the seeds under its own brands ("Asgrow" and

---

[3] Doc. no. 60 (Monsanto's evidentiary submission), Ex. B, Affidavit of Dion McBay, ¶ 4 at 1.

[4] *See id.*; *see also id.*, Ex. C, Affidavit of Timothy W. Conner, ¶¶ 3-4 at 1.

[5] *See id.*, Ex. B, McBay affidavit, ¶ 8 at 2.  *See also id.*, Ex. A ('605 patent).

[6] *See id.*, Ex. B, McBay affidavit, ¶ 6 at 2.

"DeKALB"), but also licensed other companies to insert the gene into their seed varieties.[7]  One of the licensed "seed partners" was Delta and Pine Land Company, which sold Roundup Ready soybeans under the brand name "Sure-Grow Seed."[8] Regardless of which company marketed the seeds, each grower-purchaser was required to obtain a limited-use license, known as the "Monsanto Technology Agreement."   The Technology Agreement allowed the use of Roundup Ready soybean seeds for a "single commercial crop."  Growers were prohibited from saving any soybeans harvested from a crop for replanting, or to sell or supply Roundup Ready soybeans to any third party for planting or replanting.[9]

## FACTUAL BACKGROUND

Over three decades ago, defendant Wayne White cultivated corn and cotton on approximately 1,000 acres of land in Dutton, Alabama.[10]  He managed the farm with the assistance of his son, defendant Michael White.[11]  Wayne White "quit farming" in 1971, however, and he has not cultivated any land since.[12]  Michael White worked

---

[7] *Id.*, ¶¶ 5, 9.

[8] *See* doc. no. 60 (Monsanto's evidentiary submission), Ex. E, Affidavit of Ann Jennings Shackelford, ¶¶ 2, 5.

[9] *See id*, Ex. B, McBay affidavit, ¶ 11 at 2-3.  *See also id.*, Exs. DM-1 through DM-6 (sample copies of Monsanto Technology Agreement).

[10] *See* doc. no. 60 (Monsanto's evidentiary submission), Ex. F, Deposition of Michael White, at 9-10, 24-25.

[11] *See id.*; *see also* doc. no. 62 (defendants' evidentiary submission), Ex. A, Affidavit of Michael White, at 1 (Michael White identifies Wayne White as his father).

[12] Doc. no. 60 (Monsanto's evidentiary submission), Ex. F, Deposition of Michael White, at

as a mechanic from 1972 to 1976, but returned to farming in 1977.[13]  Because his father had sold "everything," Michael had to purchase new equipment and rent land. Michael White started by sowing a variety of crops, including soybeans.[14]

Michael White expanded his business in 1982, when he started a company called "White's Seed Cleaning," also named as a defendant in this case.[15]  The business started by chance.  Michael White was cleaning seeds on the back of his truck one day, when another farmer came by and asked if White also would clean his seeds.  Sensing an opportunity, Michael White  established White's Seeds Cleaning and "started cleaning for the public."[16]  Sometime thereafter, Michael White also began to sell seeds to other growers, and was licensed by the State of Alabama to do so.[17]

Randy Morgan, a salesman for Sure-Grow Seed, solicited an Alabama farmer named Tim Abernathy in 1996.[18]  Morgan gave Abernathy eight to sixteen bags of Roundup Ready soybeans, without requiring him to agree to the terms of the

---

25-26.  *See also* doc. no. 62 (defendants' evidentiary submission), Ex. A, Michael White affidavit, at 1.

[13] Doc. no. 60 (Monsanto's evidentiary submission), Ex. F, Deposition of Michael White, at 13-14, 24.

[14] *Id.* at 26-27.

[15] *Id.* at 18.

[16] *Id.*  Michael White was the sole owner of White's Seed Cleaning.  *Id.*

[17] *Id.* at 156-58.

[18] Doc. no. 62 (defendants' evidentiary submission), Ex. C, Affidavit of Tim Abernathy.

Monsanto Technology Agreement.[19]   After conversing with Morgan, Abernathy understood that he and his father, Ronald Abernathy, "could save the seed and replant some of the soybeans."[20]   Abernathy gave the soybeans to his father, who planted them during the 1996 growing season.   After the soybeans were harvested, Ronald Abernathy took them to Michael White to be cleaned in April of 1997.[21]

As partial payment for the cleaning service, Ronald Abernathy gave Michael White six to eight bags of his harvested Roundup Ready soybeans.[22]   Michael White understood from his conversation with Ronald Abernathy that he had received the Roundup Ready soybeans from a Sure-Grow salesman.   Michael White also understood that there were no restrictions on the use of these particular seeds.[23]   Even so, Michael White knew that he was "supposed to buy [Roundup Ready soybean seeds]," and "supposed to sign a contract."   White believed that his was a unique situation, however, and he decided to "[take] advantage of it."[24]

---

[19] *See id.*

[20] *Id.*

[21] *Id.*

[22] Doc. no. 62 (defendants' evidentiary submission), Ex. A, Affidavit of Michael White, at 2.; doc. no. 60 (Monsanto's evidentiary submission), Ex. M, Declaration of Ronald Dean Abernathy, ¶ 5 at 1.

[23] *See* doc. no. 60 (Monsanto's evidentiary submission), Ex. F, Michael White deposition, at 33-51 and 122-25.

[24] *Id.* at 122.  In context, Michael White's testimony was as follows:

Q.    Okay.  It was your understanding at least that Monsanto had prohibited growers from saving Roundup Ready soybeans?

Michael White planted the soybeans received from Abernathy sometime "about [19]98," and continued to plant soybeans harvested from that (and subsequent crops) "[u]p until 2001 or [200]2."[25]  Michael White recalled, "those first ones I got, I probably planted 6 or 8 acres.  And then I planted, I think, 18 acres, and then I planted maybe 36 acres, and then maybe 100 to 120 acres."[26]

Michael White also began to sell harvested Roundup Ready soybeans to other growers.  He sold at least 100 bushels in 2001,[27] and between 1,000 and 2,000 bushels in 2002.[28]  All beans and harvests originated from the "original stock" of Roundup

---

A.   I was shocked that — like you said, yeah, you were supposed to buy them, you were supposed to sign a contract.  And then a salesman who was — had the authority to sell their technology would give it away and tell you to do it.  Yeah.  I took advantage of it.

Q.   Because you thought you had gotten something that — you had gotten around the restriction on not being able to save them?

A.   Not around it, I mean, your men were giving it away.

Q.   You didn't get it from a Monsanto salesman, did you?

A.   No, but I got it from a man who seemed very truthful.

Q.   You don't remember —

A.   Abernathy was his name.

*Id.* at 122-23.

[25] *Id.* at 33.

[26] *Id.* at 120.

[27] *See id.* at 138.

[28] *Id.* at 137-38.

7

Ready soybeans that Michael White had received from Ronald Abernathy.[29]

Michael White then made two significant changes to his business operations in 2002.  Sometime that year, Michael White incorporated White's Seed Cleaning, and in the process changed the name of his business to "White Farms Feed & Seed, Inc.,"[30] which also is named as a defendant in this action.  Michael White also stopped selling Roundup Ready soybeans as seed stock.  As he recalled, "[i]t was getting to the point I realized that I needed to quit."[31]  "[W]e started out not thinking nothing about it, and we got to hearing that Monsanto would sue you.  No universities had, but Monsanto would, so we quit.  Or I quit."[32]

In the fall of 2002, Clifford White, a licensed private investigator, began an investigation into allegations that Michael White was cleaning, saving, and selling Roundup Ready soybeans.[33]  As part of the investigation, Clifford White implemented an "undercover operation" aimed at purchasing Roundup Ready soybeans from Michael White.[34]  Mike Crouch, David Waldrop, and Eddie Reid were hired to carry

---

[29] *See id.* at 51.

[30] *Id.* at 19-21.

[31] *Id.* at 140.

[32] *Id.* at 233.

[33] Doc. no. 60 (Monsanto's evidentiary submission), Ex. G, Affidavit of Clifford W. White, ¶¶ 2-3 at 1.

[34] *Id.*, ¶ 3 at 1.

out this task.[35]

Crouch and Waldrop first made a visit to Michael White on October 5, 2002, when they purchased a mix of seeds for planting "deer plots."[36]  Crouch and Waldrop made another visit to Michael White on December 7, 2002, and on this occasion, they asked about purchasing soybeans for planting as a cash crop.[37]  Michael White responded that he was no longer selling.  As he recalled, "I had quit.  I told them I had quit.  Yeah . . . [I had] sold some Roundup beans [in the past], but when these guys started approaching me, I had done quit.  I wasn't going to sell any more.  White Farms Feed & Seed, I never sold any."[38]

The investigators were persistent, however, and on several subsequent visits they (in White's words) "kept begging" him to sell them some Roundup Ready soybeans.[39]  The investigators also contacted Michael White by telephone.  As White

---

[35] *Id.*, ¶ 4 at 1-2.

[36] Doc. no. 60 (Monsanto's evidentiary submission), Ex. H, Affidavit of Mike Crouch, ¶ 5 at 1; *id.*, Ex. I, Affidavit of David Waldrop, ¶ 3 at 1.

[37] *Id.*, Ex. H, Affidavit of Mike Crouch, ¶ 6 at 2; *id.*, Ex. I, Affidavit of David Waldrop, ¶ 4 at 2.

[38] *Id.*, Ex. F, Michael White deposition, at 233.  This evidence is disputed.  According to Mike Crouch, "Michael White told me that he would sell me some Roundup Ready soybeans for ten dollars a bushel, however, he did not have any to sell at that time."  *Id.*, Ex. H, Crouch affidavit, ¶ 6 at 2.  *See also id.*, Ex. I, Waldrop affidavit, ¶ 4 at 2 ("Michael White told Mr. Crouch and myself that he would sell Roundup Ready soybeans for $10.00 a bushel, but he did not have any on hand to sell at that time.").

[39] Doc. no. 60 (Monsanto's evidentiary submission), Ex. F, Michael White deposition, at 225-26.

recalled, they "worried me to death [with] about 30 phone calls.  I just wanted rid of them."[40]  Michael White was especially upset when his wife received a call from Crouch one evening.  At the next opportunity, Michael White told Crouch that he was not selling Roundup Ready soybeans, and that he "wasn't going to fool with him no more."[41]

Michael White's position was not unequivocal, however.  As he later recalled, he told the investigators that, "if anybody wanted to sell any [Roundup Ready soybeans], I would tell them about them or I would locate them some, but I kept thinking they would go away."[42]  Michael White also told the investigators, "I'm not fooling with [you] no more.  I will find you — I will try to find you some, or I can probably find you some."[43]

Finally, in April of 2003, Michael White told Crouch that his neighbor, Nacy Meeks, had some Roundup Ready soybeans.[44]  This prompted Crouch and Eddie Reid

---

[40] *Id.* at 229-30.

[41] *Id.* at 227.

[42] *Id.* at 226.

[43] *Id.* at 230.

[44] *See id.* at 227-28.  This evidence is disputed.  Mike Crouch claims that in April 2003, he

spoke with Michael White several times about buying some Roundup Ready soybeans.  Mr. White told me that he had a neighbor that had some soybeans to sell. Mr. White told me that he would make arrangements with his neighbor to sell me the seed. On April 15, 2003, Michael White told me that he had gotten in touch with his neighbor and had arranged to get the soybeans.  I agreed to come up on Friday, April 18, 2003 to pick up the seed.

10

to pay a visit to Michael White on April 18, 2003.  Michael White gave the men

directions to Nacy Meeks's cotton gin in Pisgah, Alabama, where the soybeans were

located.[45]  Crouch asked Michael White to accompany him to Meeks's property, and

to assist him in loading or obtaining the beans.  White refused, and told him that he

"needed to wait on Nacy Meeks or his son."[46]  The investigators then asked Michael

White to accept $1,430.00 as payment for the soybeans.  According to White, the

money was unsolicited:

> Q.    Okay.  And you took the money; right?
>
> A.    I didn't take the money.  They brought it down there and left it.
>       Told me a bunch of lies in the process just to get me to do that.
>
> Q.    Well, did you tell them that they could leave it with Meeks?
>
>            . . . .
>
> A.    They said they had tail light trouble.  They didn't want to wait on
>       Meeks.  And they forgot their checkbook.[47]

---

*Id.*, Ex. H, Crouch affidavit, ¶ 8 at 2.

[45] *See* doc. no. 60 (Monsanto's evidentiary submission), Ex. F, White deposition, at 227 ("I told him where some was.  Nacy Meeks had lost a big farm he had to auction off, and he had some up there in a gin building, and I told him where they was at.").  *See also id.*, Ex. H, Crouch affidavit, ¶ 9 at 2 ("Mr. White gave us directions to his neighbor's facilities in Pisgah, Alabama, where we could pick up the soybeans.  Specifically, he directed me to an old cotton gin in Pisgah where an old Green Mack truck was parked and loaded with bushel bags of soybeans.").

[46] Doc. no. 62 (defendants' evidentiary submission), Ex. A, Affidavit of Michael White, at unnumbered page 3.

[47] Doc. no. 60 (Monsanto's evidentiary submission), Ex. F, Michael White deposition, at 231-32.

Michael White further explained:

> Mr. Crouch informed me that he had forgotten his check book to pay
> Nacy Meeks for the beans, but that [he and Eddie Reid] had, between
> the two of them, enough cash to pay for the beans, as I recall.  I asked
> him to wait for Nacy Meeks and he said they had a tail light out on their
> vehicle and could not wait on Mr. Meeks.  They asked me to hold the
> cash for Mr. Meeks.[48]

Michael White obliged by taking the cash, putting a rubber band around it, and

placing a slip of paper with Nacy Meek's name on it under the band.[49]  Crouch

offered to pay Michael White a "brokerage fee," which he refused.  Crouch also asked

Michael White for a receipt, which White also refused, because the cash "was not

[his] money."  White recalls that "Mr. Crouch became every [sic] annoyed because

I wouldn't write him a receipt."[50]

Crouch and Reid then drove to Nacy Meek's cotton gin, where they found a

truck loaded with bushels of soybeans.[51]  (The soybeans were later determined to be

Roundup Ready.)[52]  Crouch loaded 130 bags onto his trailer and transported the beans

to his home in Russell County, Alabama.  There is no evidence that Nacy Meeks, or

---

[48] Doc. no. 62 (defendants' evidentiary submission), Ex. A, Affidavit of Michael White, at unnumbered pages 3-4.

[49] *Id.* at 4.

[50] *Id.*

[51] Doc. no. 60 (Monsanto's evidentiary submission), Ex. H, Crouch affidavit, ¶ 10 at 3.

[52] *See id.*, ¶ 11 at 3; *id.*, Ex. K, Affidavit of Brian Ojala, ¶¶ 4-6 at 2.

anyone else, was present when the bags were loaded and carried away.[53]  Sometime

later, Nacy Meeks went to see Michael White, and received the entire $1,430.00 in

cash left by the investigators.[54]

## PROCEDURAL BACKGROUND

Monsanto filed this lawsuit on October 15, 2003, naming as defendants Wayne

White, Michael White, White's Seed Cleaning, and White Farms Feed & Seed, Inc.[55]

The action was originally assigned to Magistrate Judge Davis on the date of filing,

in accordance with the standard procedures of this court to randomly assign a

percentage of newly-filed civil actions to magistrate judges.[56]  Monsanto moved for

partial summary judgment against all defendants on March 22, 2005.[57]  The motion

had two principal components.  Monsanto claimed that all defendants infringed the

'605 patent by:  (i) planting, producing, offering for sale and selling an unauthorized

supply of Roundup Ready soybeans in 1998, 1999, 2000, 2001, and 2002; and (ii)

brokering the sale of Roundup Ready soybeans belonging to Nacy Meeks in April of

---

[53] *See id.*, Ex. H, Crouch affidavit, ¶ 10 at 3.

[54] *See* doc. no. 62 (defendants' evidentiary submission), Ex. A, Affidavit of Michael White, at unnumbered page 4.

[55] Doc. no. 1.

[56] See the General Orders of Reference adopted by the judges of the U.S. District Court for the Northern District of Alabama on July 25, 1996 and May 8, 1998, as amended July 27, 2000.  *See also* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72; and Local Rule 72.

[57] Doc. no. 56.

2003.[58]

The Magistrate Judge recommended that summary judgment against *Wayne White* (the father of defendant Michael White) be denied,[59] but that all remaining aspects of Monsanto's motion be granted. Specifically, and without distinguishing between each defendant, the Magistrate Judge determined that Michael White, White's Seed Cleaning, and White Farms Feed & Seed, Inc., infringed the '605 patent by: (1) saving, planting, and producing an unauthorized supply of Roundup Ready soybean seeds in 1998, 1999, 2000, and 2001; (2) offering for sale and selling an unauthorized supply of Roundup Ready soybeans in 2001 and 2002; and (3) offering for sale and selling an unauthorized supply of Roundup Ready soybean seeds belonging to Nacy Meeks in 2003.[60]

The Magistrate Judge also recommended that a permanent injunction be entered against Michael White, White's Seed Cleaning, and White Farms Feed & Seed, Inc., restraining those defendants from using, planting, producing, offering to sell and selling any crop seed containing the Roundup Ready trait or the technology protected by the '605 patent; and that a permanent injunction be entered enjoining the same defendants from cleaning, conditioning, bagging, or otherwise preparing

---

[58] *See id.*

[59] Doc. no. 67 (Report and Recommendation), at 12.

[60] *Id.*

Roundup Ready crop seed for planting.[61]  These defendants objected to Magistrate

Judge's recommendations, and the case then was randomly reassigned to this court

for review of the objections.

## DISCUSSION

35 U.S.C. § 271(a) provides, "[e]xcept as otherwise provided in this title,

whoever without authority . . . uses, offers to sell, or sells any patented invention . .

. infringes the patent."  Normally, a patent infringement analysis entails two steps.

The first step is determining the meaning and scope of the patent claims asserted to

be infringed, which is a question of law, reviewed *de novo* on appeal.  *See Cybor*

*Corporation v. FAS Technologies, Inc.*, 138 F.3d 1448, 1454-55 (Fed. Cir. 1998) (*en*

*banc*); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976, 979 (Fed. Cir.

1995) (*en banc*).  The second step is comparing the properly construed claims to the

device or product accused of infringing, *see Markman*, 52 F.3d at 976, which is a

question of fact and reviewed only for clear error.  *See Xerox Corporation v. 3COM*

*Corporation*, 267 F.3d 1361, 1364 (Fed. Cir. 2001).

Here, it is important to note that the first step of the analysis, commonly known

as claim construction, is not in dispute.  Instead, the court is asked to resolve the

factual question of whether defendants planted, sold, or offered to sell Roundup

---

[61] *Id.*

Ready soybeans between 1998 and 2003.  With regard to that issue, numerous district courts have consistently held that the planting or sale of Roundup Ready soybeans, without authorization from Monsanto,[62] results in infringement of the claims asserted in the '605 patent.  *See, e.g., Monsanto Company v. Scruggs*, 249 F. Supp. 2d 746, 752 (N.D. Miss. 2001); *Monsanto Company v. Trantham*, 156 F. Supp. 2d 855, 868 (W.D. Tenn. 2001); *Monsanto Company v. Good*, 2004 WL 1664013, at *6 (D.N.J. July 23, 2004); *Monsanto Company v. Hartkamp*, 2001 WL 34079482, at *2 (E.D. Okla. April 19, 2001).  Summary judgement will be appropriate, however, only if the facts relating to the planting or selling of the soybeans are undisputed.  *See, e.g., Good*, 2004 WL 1664013, at *6; *Hartkamp*, 2001 WL 34079482, at *2.

## A.   Wayne White

There is no evidence that Wayne White, Michael White's father, had any involvement with Roundup Ready soybeans.  The court therefore accepts that part of the Magistrate Judge's report recommending that plaintiff's motion for summary judgment against this defendant be denied.[63]

---

[62] A grower may obtain authorization to plant Roundup Ready soybeans by agreeing to the terms of Monsanto's Technology Agreement.

[63] Monstanto subsequently has revealed that it no longer intends to seek judgment against Wayne White.  *See* doc. no. 72 at 2 n.2.

**B.      Michael White — offering for sale and selling an unauthorized supply of Roundup Ready soybean seeds belonging to Nacy Meeks in 2003**

The Magistrate Judge determined that Michael White infringed the '605 patent by selling, or offering to sell, the Roundup Ready soybean seeds belonging to Nacy Meeks in 2003.[64]  This court rejects that part of the Magistrate Judge's report.

Mike Crouch, David Waldrop, and Eddie Reid were part of an "undercover operation" aimed at purchasing Roundup Ready soybeans from Michael White. Crouch and Waldrop visited Michael White on December 7, 2002, and asked about purchasing soybeans for planting.  Michael White submitted evidence indicating that he told the men, in no uncertain terms, that he was no longer selling Roundup Ready soybeans.  Undaunted, Crouch and Waldrop "kept begging" for Roundup Ready soybeans over the course of several months.

Finally, in April of 2003, Michael White told Crouch that his neighbor, Nacy Meeks, had some Roundup Ready soybeans.  This information prompted Crouch and Reid to pay Michael White a visit.  White gave the men directions to Nacy Meeks's property, and told them where the soybeans were located.  Crouch asked Michael White to accompany him to Meeks's property, and to assist him in obtaining and loading the beans.  White refused, and told him that he needed to "wait on Nacy Meeks or his son."  Crouch then asked Michael White to hold $1,430.00 in cash for

---

[64] Doc. no. 67 (Report and Recommendation), at 11.

Nacy Meeks.  Michael White reluctantly took the cash, put a rubber band around it, and put Nacy Meek's name on it.  Crouch offered Michael White a "brokerage fee," which White refused.  Crouch also asked Michael White for a receipt, which White refused.  Michael White reasoned that the payment was "not [his] money."

Crouch and Reid proceeded to Nacy Meek's cotton gin, where they found a truck loaded with bushels of soybeans.[65]  Without ever speaking to either Nacy Meeks or his son, or anyone else for that matter, Crouch loaded 130 bags onto his trailer and transported the beans to his home in Russell County, Alabama.  Sometime later, Nacy Meeks went to see Michael White, and received the entire sum of money left with White by the investigators.  Michael White maintains that the "soybeans that Mr. Crouch got at Meeks' Farms belonged to Nacy Meeks, I had no ownership interest in them, and I received nothing for them."[66]

Upon review of this evidence, a reasonable jury could conclude that Michael White did not "sell," or "offer to sell," the Roundup Ready soybeans belonging to Nacy Meeks.  At most, construing the evidence in the light most favorable to the non-moving party, Michael White told the investigators that Nacy Meeks was in possession of Roundup Ready soybeans, and gave them directions to the location of

---

[65] Doc. no. 60 (Monsanto's evidentiary submission), Ex. H, Crouch affidavit, ¶¶ 9-11.

[66] Doc. no. 62 (defendants' evidentiary submission), Ex. A, Affidavit of Michael White, at 4.

Nacy Meeks's cotton gin, where the beans were located.  Monsanto does not cite, and the court could not locate, any decision which found a violation of 35 U.S.C. § 271 under similar factual circumstances.  The court concludes that summary judgment should be denied, notwithstanding the opposite conclusion by the Magistrate Judge.

The Magistrate Judge's analysis is flawed in several respects.  The Magistrate Judge ruled in favor of Monsanto on the basis that: (i) Michael White told the investigators that his neighbor, Nacy Meeks, was in possession of Roundup Ready soybeans; (ii) Michael White told the investigators to go to Meeks's cotton gin, where the beans were located; (iii) *Michael White set the price of the seed*; and (iv) *Michael White gave Crouch and Reid permission to take possession of the seeds*.  Parts (i) and (ii) of the Magistrate Judge's analysis are correct, but for reasons discussed above, those factual findings are insufficient to prove patent infringement.  Parts (iii) and (iv) of the Magistrate Judge's analysis are simply incorrect.  The Magistrate Judge failed to adhere to two basic tenets of summary judgment:  it is well-settled that the *non-movant's* evidence is to be taken as true for purposes of summary judgment; and, all reasonable inferences from the evidence are to be made in favor of the *non-moving* party.

With regard to whether Michael White set the price of the seed, the Magistrate Judge reasoned as follows:

Waldrop and Crouch paid for the seeds.  Since they had no contact with Meeks, they could only have learned how much to pay for the seeds from White.  Crouch and Waldrop both stated in their affidavits that, during an early conversation with White, White stated that if he could get some Roundup Ready soybean seeds to sell them, the price would be $10 per bushel.  (Crouch Aff. at ¶ 6;[67] Waldrop Aff. at ¶ 4[68]).  At the time Crouch actually bought the seeds belonging to Meeks, he states that White not only told him where the seeds were located but also told him that the price for these beans was $1,430.  (Crouch Aff. at ¶ 9[69]).  There

---

[67] In paragraph six of his affidavit, Mike Crouch stated as follows:

On December 7, 2002, Mr. Waldrop and I went to White Seed again to purchase soybeans for deer feed and also inquire about purchasing soybeans for planting. Michael White told me that he would sell me some Roundup Ready soybeans for ten dollars a bushel, however, he did not have any to sell at that time.  Mr. White agreed to call me when he had cleaned and bagged some Roundup Ready soybeans grown by one of his neighbors.

Doc. no. 60 (Monsanto's evidentiary submission), Ex. H, Crouch affidavit, ¶ 6.

[68] In paragraph four of his affidavit, David Waldrop stated as follows:

I accompanied Mr. Crouch again to White Seed on December 7, 2002.  Our objective on the December 7th visit was to purchase additional deer plot seed and also inquire about purchasing some soybeans for planting.  During that visit, Michael White told Mr. Crouch and myself that he would sell Roundup Ready soybeans for $10.00 a bushel, but he did not have any on hand to sell at that time.  I did go ahead a [sic] purchase 10 bags of corn and 15 bags of soybeans for planting deer plots.  A copy of the receipt written out by Michael White for this purchase is attached hereto as Exhibit DW-1.

Doc. no. 60 (Monsanto's evidentiary submission), Ex. I, Waldrop affidavit, ¶ 4.

[69] In paragraph nine of his affidavit, Mike Crouch stated as follows:

On April 18, 2003, Eddie Reid and I went to White Seed and met with Michael White in order to purchase the Roundup Ready soybeans that I had discussed with Mr. White several times since December of 2002.  I told Mr. White that I wanted to purchase around 150 bushels of soybeans, Mr. White gave us directions to his neighbor's facilities in Pisgah, Alabama where we could pick up the soybeans. Specifically, he directed me to an old cotton gin in Pisgah where an old Green Mack truck was parked and loaded with bushel bags of soybeans.  Mr. White also told us that the soybeans belonged to Nacy Meeks.  I paid Mr. White $1,430.00 in cash for

were 130 bags of seeds, making the price $11 per bushel.  Even if White had no financial interest in this transaction, he was clearly acting as Meek's agent in facilitating the sale of his seeds.[70]

There are several problems with this analysis.  First, there is no direct evidence that Michael White ever "told" the investigators the price of Nacy Meeks's soybeans.  The Magistrate Judge cites to paragraph nine of Crouch's affidavit; but there, Crouch merely said "I *paid* Mr. White $1,430.00 in cash for 130 sixty pound bags."[71]  Crouch did not explain *why* he handed over that sum.  To shore up this deficiency, the Magistrate Judge drew inferences from disputed evidence to conclude that Michael White actually set and communicated the price of the seed.

*On December 7, 2002*, the investigators asked Michael White to sell them soybeans for planting.  Michael White testified that "I had quit.  I told them I had quit.  Yeah . . . [I had] sold some Roundup beans [in the past], but when these guys started approaching me, I had done quit.  I wasn't going to sell any more."[72]  Mike Crouch remembered the conversation differently, saying, "Michael White told me that he would sell me some Roundup Ready soybeans for ten dollars a bushel, however,

---

130 sixty pound bags.

Doc. no. 60 (Monsanto's evidentiary submission), Ex. H, Crouch affidavit, ¶ 9.

[70] Doc. no. 67 (Report and Recommendation), at 11.

[71] *See* doc. no. 60 (Monsanto's evidentiary submission), Ex. H, Crouch affidavit, ¶ 9.

[72] *See* doc. no. 60 (Monsanto's evidentiary submission), Ex. F, White deposition at 233.

he did not have any to sell at that time."[73]  David Waldrop had a similar recollection, saying, "Michael White told Mr. Crouch and myself that he would sell Roundup Ready soybeans for $10.00 a bushel, but he did not have any on hand to sell at that time."[74]

*Four months after the December 7th conversation*, the investigators left $1,430.00 with Michael White, drove to Nacy Meeks's cotton gin, and loaded 130 bushels of Roundup Ready soybeans into Crouch's trailer.  The Magistrate Judge found this to be significant, because $1,430.00, divided by 130 bushels, equals $11 per bushel.  The Magistrate Judge reasoned that, because $11 per bushel was approximate to $10 per bushel (alleged to have been quoted by Michael White to Crouch and Waldrop), Michael White must have set the price of the seeds belonging to Nacy Meeks.

This reasoning is problematic in that it (i) rejects or ignores the non-movant's evidence for purposes of summary judgment, and (ii) draws an inference against the non-moving party based on the movant's evidence, which is disputed.  What is most remarkable about the Magistrate Judge's analysis is that even Monsanto did not advance the rationale in its briefs.  Indeed, Michael White offered evidence to indicate that *Crouch* was the one who set the sale price for the soybeans.  White's

---

[73] *See* doc. no. 60 (Monsanto's evidentiary submission), Ex. H, Crouch affidavit, ¶ 6.

[74] *See* doc. no. 60 (Monsanto's evidentiary submission), Ex. I, Waldrop affidavit, ¶ 4.

affidavit states:

> I did not receive any monies whatsoever from this transaction.   Mr.
> Crouch tried to give me One (1) or Two (2) Dollars a bushel as a
> "brokerage fee" and I refused to accept his money.   *He tried to get me*
> *to calculate Eleven Dollars ($11.00) and me keep a dollar and I refused.*
> Mr. Crouch also asked me to write him a receipt for the cash and I
> refused to do so in as much as it was not my money and I did not receive
> any of the money from the sale of the soybeans.  Mr. Crouch became
> every [sic] annoyed because I wouldn't write him a receipt.   The
> soybeans that Mr. Crouch got at Meeks' Farms belonged to Nacy
> Meeks, I had no ownership interest in them, and I received nothing for
> them.[75]

The implication is clear.  Michael White indicates that, based on the conversation of

December 7th, when the price of $10 per bushel allegedly was quoted, *Crouch set the*

*price* of $11 per bushel in order to force a commission or brokerage fee on Michael

White.  The Magistrate Judge ignored this evidence.

As the fourth and final basis for granting summary judgment, the Magistrate

Judge reasoned that Michael White gave the investigators "permission" to take

possession of the seed belonging to Nacy Meeks.  The Magistrate Judge's reasoning

was based on the deposition testimony of Nacy Meeks:

> [Nacy] Meeks testified that he had no contact with the buyers of the
> seeds in this transaction.  He further testified that he did not know that
> the seeds had been sold until he received a call from White telling him
> that they had been sold and to come get the money.  Thus, White did not
> merely direct Crouch and Waldrop to the place where the seeds were

---

[75]Doc. no. 62 (defendants' evidentiary submission), Ex. A, Affidavit of Michael White, at
4.

located.  He obviously had the authority to give Crouch and Waldrop permission to take possession of the seeds, because this is what Crouch and Waldrop did, without ever talking to Meeks.[76]

Although Nacy Meeks's testimony may be damaging to Michael White, it is not as conclusive as the Magistrate Judge suggests.  At his deposition, Meeks testified that White offered to sell Roundup Ready soybeans for him;[77] and that, eventually, one sale was made.[78]  Meeks could not recall the date of the transaction, or the names of the purchasers.[79]  Meeks remembered that he received money from the deal, but he could not recall how much he received.[80]  Meeks did remember that "Michael told me to come by.  He had some money for me, he sold some soybeans."[81]  Even assuming that Meeks's testimony was, in fact, in reference to the 2003 transaction (a big assumption to be drawn from such vague testimony), a reasonable jury could choose to believe Michael White's testimony that he never brokered the sale of Nacy Meeks's soybeans, but instead was a victim of overzealous and overreaching Monsanto representatives who wanted desperately to ensnare him in the Meeks sale.

Moreover, the Magistrate Judge neglects another important piece of evidence.

---

[76] Doc. no. 67 (Report and Recommendation), at 11.

[77] Doc. no. 60 (Monsanto's evidentiary submission), Ex. J, Deposition of Nacy Meeks, at 88-90.

[78] *Id.* at 92.

[79] *See id.* at 92, 103-06.

[80] *See id.* at 93, 95.

[81] *Id.* at 103.

After receiving directions to Nacy Meeks's property, Mike Crouch asked Michael White to assist him in obtaining and loading Nacy Meeks's soybeans. Michael White refused, and told him that he needed to "*wait on Nacy Meeks or his son*." A reasonable jury could conclude from this evidence that Michael White did <u>not</u> give the investigators "permission" to take possession of the soybeans belonging to Nacy Meeks. Instead, for whatever reason, the investigators hauled off the soybeans without obtaining permission from anyone at all.

Michael White's version of the events has consistently been that Monsanto's representatives attempted to entrap him into selling Roundup Ready soybeans and, when that did not work, they harassed him repeatedly until he found some soybeans for them to buy. Michael White's version also consistently advances the argument that he neither offered to sell, nor sold, any patented soybeans in 2003, but that Crouch and Waldrop tried mightily to ensnare him in the sale of Meeks' soybeans by setting a higher asking price (hoping to implicate White in receiving a commission), dropping the cash in his lap, not waiting for Nacy Meeks and his son, but instead trying to convince White to help them load the soybeans while feigning that they were in a hurry.

In light of the foregoing, the court cannot conclude consistently with the principles governing summary judgment motions that Michael White set the price of

25

Roundup Ready soybeans belonging to Nacy Meeks, or that he gave the investigators permission to take possession of the beans.  Michael White offered sufficient summary judgment evidence to indicate that, at most, he performed a gratuitous act for Meeks (holding the money and providing directions to the Meeks' Gin), not a sale of patented soybeans.  Whether Michael White sold or offered to sell Nacy Meeks' soybeans is a genuine issue of material fact that remains in dispute.  Accordingly, the court declines to accept the Magistrate Judge's recommended finding that Michael White "sold," or "offered to sell," the soybeans belonging to Nacy Meeks in 2003. The motion for partial summary judgment is due to be denied in this respect.

## C.    White's Seed Cleaning

Michael White established White's Seed Cleaning in 1982.  Fifteen years later, in April 1997, Ronald Abernathy brought Roundup Ready soybeans to Michael White for cleaning.  As partial payment for these services, Michael White received six to eight bags of Roundup Ready soybean seeds.  Michael White planted the seeds in "about [19]98," and "[u]p until 2001 or [200]2."  As he recalled, "those first ones I got, I probably planted 6 or 8 acres.  And then I planted, I think, 18 acres, and then I planted maybe 36 acres, and then maybe 100 to 120 acres."  Sometime in 2002, Michael White incorporated White's Seed Cleaning so that it became White Farms Feed & Seed, Inc.

1.     **Saving, planting, and producing an unauthorized supply of Roundup Ready soybean seeds in 1998, 1999, 2000 and 2001**

The Magistrate Judge determined that White's Seed Cleaning (through Michael White) saved, planted, and produced Roundup Ready soybeans in 1998, 1999, 2000, and 2001. The court agrees with defendants that there is no evidence in the record to support this finding.

Monsanto declares, "White testified in his deposition that all of his farming and seed selling activities were conducted through his sole proprietorship, White's Seed Cleaning, through 2002."[82] The problem for Monsanto, however, is that the evidence does not say this at all. Monsanto cites the following passages from Michael White's deposition: "p. 21, ll. 13-21, p. 23, ll. 6-23, p.24, ll. 1-11."[83] In those passages, Michael White testified as follows:

Q.     You incorporated in 2002. Are you saying that was *White Farms Feed & Seed, Inc.*?

A.     Right.

Q.     That's what that was?

A.     Right.

Q.     All right. So, White's Seed Cleaning became — essentially, you incorporated and became White Farms Feed & Seed?

---

[82] Doc. no. 69 (Monsanto Company's Response to Defendants' Objections), at 2.
[83] *Id.*

27

A.     Right.[84]

           . . . .

Q.     Do you operate your own farm under this *White Farms Feed &
       Seed*, or do you have a separate farming business entity?

A.     It's basically tied together.  It intermeshes so much, you know,
       you buy your fertilize[r] and your chemicals, and then you, you
       know, if you grow — I grow certified seed for Auburn a lot and,
       you know, it just all intermeshes.  My accountant said it just
       intermeshed, just put it all in one pot and do it.

Q.     *So, all of your farming activities are conducted under the White
       Farms Feed & Seed business*?

A.     *Now they are since I've incorporated*.

Q.     *Since you've incorporated?*

A.     *(Witness nods head.)*

Q.     All right.  So when you buy fertilizer, do you pay for it with a
       check from the business?

A.     Right.

Q.     All right.  And the same thing if you have to buy diesel fuel, you
       just pay for it through the business?

A.     Right.

Q.     Everything is under the business name?

A.     Right.

---

[84] Doc. no. 60 (Monsanto's evidentiary submission), Ex. F, White deposition, at 21 lines 13-
21 (emphasis supplied).

Q.   Okay.  That's right?  Is that a yes?

A.   Yes.  Yes.[85]

Certainly, this evidence establishes that Michael White's farming operations were integrated once *White Farms Feed & Seed, Inc.* was incorporated in 2002.  It says nothing, however, of how the entity *White's Seed Cleaning* was used in 1998, 1999, 2000, or 2001.  During the hearing on the objections to the report and recommendation,[86] plaintiff also referred the court to pages 17-19 of Michael White's deposition,  trying to get the court to infer that the farming operations were carried out by *White's Seed Cleaning*.[87]   On these pages from Michael White's deposition, White discusses his seed cleaning business as *White's Seed Cleaning*.  Nothing is mentioned about the entity *White's Seed Cleaning* saving, planting, or producing Roundup Ready soybeans.  Monsanto's reliance on this evidence is misplaced, and summary judgment will be denied.

## 2.   Offering for sale and selling an unauthorized supply of Roundup Ready soybeans in 2001 and 2002

The Magistrate Judge determined that White's Seed Cleaning sold an unauthorized supply of Roundup Ready soybeans in 2001 and 2002.  The court agrees

---

[85] *Id.* at 23 lines 6-23; *id.* at 24 lines 1-11 (emphasis supplied).

[86] The court conducted a hearing on the objections to the report and recommendation on December 15, 2006.

[87] Doc. no. 60 (Monsanto's evidentiary submission), Ex. F, White deposition, at 17-19.

with defendants that there is no evidence to support this finding.  Michael White admitted that he sold at least 100 bushels of Roundup Ready soybeans in 2001, and between 1,000 and 2,000 bushels in 2002, but there is no evidence that White's Seed Cleaning was involved in any of these transactions.  Again, Monsanto's response is remarkable for its inability to direct the court to relevant evidence.  Monsanto declares, "White testified in his deposition that all of his farming and seed selling activities were conducted through his sole proprietorship, White's Seed Cleaning, through 2002."[88]  This statement attributes more to Michael White's deposition testimony than can be allowed for summary judgment purposes, for reasons discussed above.  Plaintiff must be precise concerning its evidence as to each entity and time-frame to support its infringement claims, for which it bears the burden of proof, in order to achieve summary judgment.

### 3.   Offering for sale and selling an unauthorized supply of Roundup Ready soybean seeds produced by Nacy Meeks in 2003

The Magistrate Judge determined that White's Seed Cleaning sold, or offered to sell, Roundup Ready soybeans seeds belonging to Nacy Meeks in 2003.[89]  White's Seed Cleaning did not exist in 2003, when the alleged transaction occurred.  This defendant cannot be liable for events which occurred in 2003.

---

[88] Doc. no. 69 (Monsanto Company's Response to Defendants' Objections), at 2.

[89] *See* doc. no. 67 at 12.

**D.      White Farms Feed & Seed, Inc.**

**1.      Saving, planting, and producing an unauthorized supply of Roundup Ready soybean seeds in 1998, 1999, 2000 and 2001**

The Magistrate Judge determined that White Farms Feed & Seed, Inc. (through Michael White), planted and harvested an unauthorized supply of Roundup Ready soybean seeds in 1998, 1999, 2000, and 2001.[90]  White Farms Feed & Seed, Inc. did not exist until 2002.  This defendant cannot be liable for events that pre-date the company's existence.

Monsanto also moves for summary judgment that White Farms Feed & Seed, Inc., planted and harvested Roundup Ready soybean seeds in *2002*.  The Magistrate Judge did not address this aspect of Monsanto's motion,[91] but the court will do so here.  The record does not specify when, or even whether, Michael White planted Roundup Ready soybeans in 2002.[92]  The record also does not specify when White Farms Feed & Seed, Inc., was incorporated in 2002.  Thus, the court cannot say that White Farms Feed & Seed, Inc. planted and harvested Roundup Ready soybeans in 2002.

Monsanto's position again is weakened by its inability to direct the court to

---

[90]*See* doc. no. 67 at 12.

[91] *See supra* note 86.

[92] *See id.*

relevant evidence.  Monsanto declares, "Mr. White admitted that he planted 120 acres of saved Roundup Ready soybeans in 2002, which was conducted in the name of White Farms Feed & Seed, Inc."[93]   Monsanto cites the following passages from Michael White's deposition:  "p. 23, ll. 6-20, p. 33, ll. 10-23, p. 34, ll. 19-21, p. 120, ll. 7-16, p. 127, ll. 4-11."[94]   In those passages, Michael White testified that he:  (i) integrated his farming operations after White Farms Feed & Seed was incorporated sometime in 2002;[95] (ii) planted Roundup Ready soybeans sometime "about '98," and "[u]p until 2001 or 2";[96] (iii) planted the Roundup Ready soybeans that he received from Ronald Abernathy;[97] (iv) planted 6 or 8 acres of Roundup Ready soybeans, then 18 acres, then 36 acres, then 100 to 120 acres;[98] and (v) told other growers that he was selling them Roundup Ready soybeans.[99]   This evidence does not support the proposition asserted by Monsanto.  Partial summary judgment will be denied.

## 2.   Offering for sale and selling an unauthorized supply of Roundup Ready soybeans in 2001 and 2002

The Magistrate Judge determined that White Farms Feed & Seed, Inc., sold or

---

[93] Doc. no. 65 (Reply to Defendants' Response), ¶ 2 at 2.

[94] *Id.*

[95] Doc. no. 60 (Monsanto's evidentiary submission), Ex. F, White deposition, at 23.

[96] *Id.* at 33.

[97] *Id.* at 34.

[98] *Id.* at 120.

[99] *Id.* at 127.

offered to sell an unauthorized supply of Roundup Ready soybean in 2001.[100]  White

Farms Feed & Seed, Inc., did not exist in 2001.  This defendant cannot be liable for

events that pre-date the company's existence.

The Magistrate Judge also determined that White Farms Feed & Seed, Inc.,

sold or offered to sell an unauthorized supply of Roundup Ready soybean in 2002.

Again, the record does not specify when Michael White sold Roundup Ready

soybeans in 2002, or when White Farms Feed & Seed was incorporated that year.

Michael White did testify, however, that he "quit" selling Roundup Ready soybeans

sometime in 2002; and, importantly, that "White Farms Feed & Seed, I never sold any

[seeds]."  Construing the evidence in the light most favorable to the non-moving

party, the court must conclude that White Farms Feed & Seed, Inc. did not sell

Roundup Ready soybeans in 2002.  The motion for partial summary judgment will

be denied.

**3.    Offering for sale and selling an unauthorized supply of Roundup Ready soybean seeds produced by Nacy Meeks in 2003**

For reasons discussed in Part B of this opinion, the court rejects the Magistrate

Judge's recommended finding that White Farms Feed & Seed, Inc., sold or offered

to sell Roundup Ready soybeans belonging to Nacy Meeks in 2003.  Monsanto's

motion for partial summary judgment will be denied.

---

[100]*See* doc. no. 67 at 12.

**E.     Michael White — 1998-2002**

The court reserves judgment on those parts of the Magistrate Judge's report recommending that Michael White saved, planted, and produced an unauthorized supply of Roundup Ready soybeans in 1998, 1999, 2000, and 2001; and, that Michael White offered for sale, and sold, an unauthorized supply of Roundup Ready soybeans in 2001 and 2002.

Don Word is counsel for defendants Wayne White, Michael White, White's Seed Cleaning, and White Farms Feed & Seed, Inc.  Mr. Word also is counsel for defendants Nacy Meeks and Meeks Farms, Inc. in *Monsanto v. Nacy Meeks and Meeks Farms, Inc.,* CV-03-B-3250-NE (N.D. Ala.) (Blackburn, J.) (recently consolidated with this case).  The parties agree that the factual basis of this case and the *Meeks* case dovetail in one significant respect:  Monsanto claims that Nacy Meeks sold Roundup Ready soybeans to undercover investigators in 2003, and that Michael White brokered the deal.[101]  The court finds that Nacy Meeks may offer testimony that is damaging to Michael White.[102]  Despite this conflict, Mr. Word has continued to represent defendants in both this action and in the *Meeks* case.  The court thus reserves ruling on this dispositive issue until the conflict is resolved or until further order of the court.

---

[101] *See* doc. nos. 71 and 72.

[102] *See supra* notes 76-81 and accompanying text.

## CONCLUSION

In accordance with the foregoing, this court accepts that part of the Magistrate Judge's report recommending that summary judgment against defendant Wayne White be denied. This court reserves judgment on those parts of the Magistrate Judge's report recommending that (i) defendant Michael White saved, planted, and produced an unauthorized supply of Roundup Ready soybean seeds in 1998, 1999, 2000, and 2001, and (ii) defendant Michael White offered for sale and sold an unauthorized supply of Roundup Ready soybeans in 2001 and 2002. All other parts of the Magistrate Judge's report will be rejected. The corresponding aspects of Monsanto's motion for partial summary judgment are due to be, and will be, denied. An appropriate order will be entered contemporaneously herewith.

DONE this 16th day of December, 2005.

_____
United States District Judge